UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 07-50097-02 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| VERNON CLAVILLE | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

Before the Court is a "Motion to Find the Jury Selection Process Utilized Bias[ed] and a Substantial Failure to Comply with 28 U.S.C. § 1861" (Record Document 41) filed by the defendant, Vernon Claville ("Claville"). Claville argued that the Western District of Louisiana's jury selection process of using voter registration records as the jury pool is biased, namely because the pool represents a disproportionately low number of African Americans. See Record Document 41-2 at 1. Claville maintained that the jury selection process violates the Equal Protection Clause of the Fourteenth Amendment, the Jury Selection and Service Act of 1968, and the Fair Cross-Section Requirement of the Sixth Amendment. See id. at 2.

The Government opposed the motion (Record Document 72), arguing that Claville failed to demonstrate that the representation of African Americans in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community and that this alleged underrepresentation is caused by systematic exclusion of the group in the jury selection process. See Duren v. Missouri, 439 U.S. 357, 364 (1979); see also U.S. Olaniyi-Oke, 199 F.3d 767 (5th Cir. 1999). The Government also noted that juries in the Western District of Louisiana are chosen at random from registered voters from each parish in the division, a practice that has been specifically approved by the Fifth Circuit. See U.S. v. Garcia, 121 F.3d 704 (5th Cir. 1997); U.S. v. Cruz-Escobar,

No. 05-108, 2006 WL 1767697 (W.D. Tex. 2006).

Missing from the original motion, but in response to the Government's opposition, Claville presented unauthenticated statistical information from the U.S. Census Bureau, namely the percentage (71.1%) of African Americans registered to vote in the state of Louisiana; the total population of each of the eight parishes comprising the Shreveport Division;[1] and the population, and corresponding percentage, of African Americans in each of those parishes. See Record Document 84, Exhibits 1 & 2. Based on the percentage of African Americans registered to vote in the state of Louisiana, Claville somehow concludes that 71.1% of the African American population in each of the eight parishes were registered to vote. Claville provided no other supporting source for his claimed calculation of the number of African Americans registered to vote in the Shreveport Division.

Claville challenges the Western District of Louisiana's jury selection process pursuant to the Equal Protection Clause of the Fourteenth Amendment, the Jury Selection and Service Act, and the Fair Cross-Section Requirement of the Sixth Amendment. The challenge pursuant to the Fourteenth Amendment is meritless, as "the commands of the Fourteenth Amendment are addressed only to the State or to those acting under color of its authority." District of Columbia v. Carter, 409 U.S. 418, 423, 93 S.Ct. 602, 605-606 (1973). Actions of the federal government are beyond the scope of the Fourteenth Amendment. See id. at 424, 93 S.Ct. at 606.

The Jury Section and Service Act states that "all litigants in Federal courts entitled to trial by jury shall have the right to . . . petit juries selected at random from a fair cross

---

[1]The Shreveport Division consists of the parishes of Bienville, Bossier, Caddo, Claiborne, DeSoto, Red River, Sabine, and Webster. See Record Document 72, Exhibit 1 at 7.

section of the community in the district or division where the court convenes." 28 U.S.C. § 1861. In addition, the Sixth Amendment "guarantees a criminal defendant the right to a trial by a jury selected from a fair cross-section of the community." U.S. v. Olaniyi-Oke, 199 F.3d 767, 773 (5th Cir. 1999). To establish a *prima facie* violation of the fair cross-section requirement, "the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Id. at 773. Challenges under both the Sixth Amendment and the Jury Selection and Service Act are governed by this three part test.

Here, the Court will assume that African Americans constitute a "distinctive" group[2] under the aforementioned test and will proceed to analyze the second and third elements. In order to determine whether there has been a violation of the fair cross-section requirement, the Fifth Circuit employs the "absolute disparity" method. See U.S. v. Garcia, 121 No. 96-20149, 1997 WL 450169, *3 (5th Cir. July 15, 1997). The Court "must look to the 'absolute disparity' between the proportion of members of an identifiable class in the community and its representation in venires from which juries are selected." U.S. v. Garcia, No. 96-20149, 1997 WL 450169, *3 (5th Cir. July 15, 1997). In the context of jury selection, the proportion "is generally achieved by subtracting the percentage of a group

---

[2]"The distinctive group consists of the pool of individuals in that division who are eligible to serve as jurors and not the group's total population in the community." U.S. v. Garcia, No. 96-20149, 1997 WL 450169, *3 (5th Cir. July 15, 1997).

on the jury wheel from the percentage of persons within that group who are eligible to serve as jurors." Id. at *3, n. 9. Thus, in this case, the Court "need only consider the absolute disparity between the percentage of [African Americans] eligible to serve on juries and the percentage of [African Americans] registered to vote in the [Shreveport] Division." Id. at *4.

     Claville presented unauthenticated "People QuickFacts" from the U.S. Census Bureau setting forth the percentage of African Americans living in the eight parishes comprising the Shreveport Division. See Record Document 84, Exhibit 2. The Court has no way to discern if this statistic represents the percentage of African Americans eligible to serve on juries,[3] as compared to the percentage of adult African American citizens. In Garcia, the parties agreed to using the percentage of adult Hispanic citizens as a substitute for the percentage of Hispanics eligible to serve on juries, even though jury service requires more than simply being an adult citizen. See Garcia, 1997 WL 450169, *4, n. 11. Such an agreement is not apparent in this case, as Claville's statistical information was first presented in his reply brief, and the Court is unaware if the Government would agree to such a substitution.

     Moreover, Claville has not presented competent statistical evidence as to the percentage of African American registered voters **in the Shreveport Division**. Claville provided what appears to be an U.S. Census Bureau table entitled, "Table 4a. Reported

---

[3]"In order to serve on a jury, one must be a citizen of the United States, at least 18 years old, be able to understand, read, speak, and write English, not suffer from a mental and physical infirmity, and not have a charge pending against him or her or have a conviction of a crime punishable by imprisonment of more than one year." Garcia, 1997 WL 450169, *3, n. 8, citing 28 U.S.C. § 1865(b).

Voting and Registrations of the Total Voting-Age Population, by Sex, Race and Hispanic Origin, for States: November 2004." Record Document 84, Exhibit 1. This table states that the percentage of African American registered voters *in the state of Louisiana* is 71.1%. See id. Relying on this percentage, Claville argues that 71.1% of the African American population in each of the eight parishes comprising the Shreveport Division is registered to vote. This methodology is suspect at best and will not suffice as a statistically valid estimate of the percentage of African American registered voters in each of the eight parishes comprising the Shreveport Division. The Court is simply not prepared to accept Claville's unsubstantiated conclusion that the percentage of African American registered voters statewide mirrors that of the percentage of African American registered voters in each of the eight parishes comprising the Shreveport Division.[4]

On the showing made, Claville's Motion to Find the Jury Selection Process Utilized Bias and a Substantial Failure to Comply with 28 U.S.C. § 1861 must be denied. He has not presented competent and/or legally sufficient statistical information to determine whether there is an "absolute disparity" between the percentage of African Americans eligible to serve on juries and the percentage of African American registered voters in the Shreveport Division.

Accordingly,

**IT IS ORDERED** that the "Motion to Find the Jury Selection Process Utilized Bias[ed] and a Substantial Failure to Comply with 28 U.S.C. § 1861" (Record Document

---

[4]The Court also questions the accuracy and relevancy of the numbers contained in the November 2004 table. More than three years have passed since November 2004 and since that time, Louisiana voter registration figures have likely been substantially affected by events such as Hurricanes Katrina and Rita in 2005.

41) filed by the defendant, Vernon Claville, be and is hereby **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this the 25th day of March, 2008.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE